UNITED STATES DISTRICT COURT`
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STARR INDEMNITY & LIABILITY CO.,                Civ.

                Plaintiff,

                                       **COMPLAINT**

    -against-

MARINE ENVIRONMENTAL
REMEDIATION GROUP, LLC

                Defendant.
------------------------------------------------------------X

        Plaintiff, STARR INDEMNITY & LIABILITY CO. ("SILC" or "plaintiff"), by its attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against the defendant MARINE ENVIRONMENTAL REMEDIATION GROUP, LLC ("MER" or "defendant"), alleges upon information and belief as follows:

**JURISDICTION**

        1.    This action is filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

        2.    The following issues constitute questions of insurance coverage under an Admiralty or Maritime contract of insurance and thereby come within the Admiralty and Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. §1333 et seq., and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

        3.    An actual controversy of a justiciable nature exists between plaintiff and defendant involving the rights and obligations under a marine contract of insurance and depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court, without further suit.

## PARTIES

4. At all material times, SILC was and is an insurance company duly organized under and existing by virtue of the laws of the State of Texas with its principal place of business in New York.

5. Upon information and belief and at all relevant times, MER is a limited liability company with an office and principal place of business at 225 Executive Drive, Moorestown, New Jersey.

6. Upon information and belief and at all relevant times, the LONE STAR was a pipelaying crane barge owned and operated by MER bearing Official Number of 8757403.

## THE POLLUTION POLICY

7. SILC issued Policy No. MASILNY00047816 to MER which provided certain pollution liability insurance for the LONE STAR, subject to the policy's terms and conditions, with a policy period from June 30, 2016, 12:01 a.m. to June 30, 2017, 12:01 a.m. (the "Policy"). A true and complete copy of the Policy is attached hereto as Exhibit "A"; and the terms and conditions of which are fully incorporated herein.

## BACKGROUND FACTS

8. As part of its application for insurance, MER represented itself as a "world leader in environmentally conscious vessel ship recycling." MER also stated that it scrapped vessels "by reverse-engineering the ship, through the removal of larger intact sections … while maintaining the ship's watertight integrity, trim and stability…Once the ship has been reduced to the lower hull area (still afloat and capable of being towed), the remaining section (referred to as the 'canoe') near the conclusion of the process is towed to either a graving dock or dock, a

marine railway, or a roller-slip, installed and blocked and the final cleaning and demolition is performed."

9. Based on these representations, among others, SILC agreed to issue the Policy and a Certificate of Financial Responsibility (CoFR) guarantee for the LONE STAR.

10. Sometime after the inception of the Policy in 2016, MER began to dismantle the LONE STAR alongside Pier 3 Roosevelt Roads in Ceiba, Puerto Rico.

11. A crew of nearly 300 men was utilized to dismantle the LONE STAR. MER first removed all of the most valuable sections (such as the crane, engines, generators, etc.), after which they proceeded to canoe the barge. Much of the of the internal piping had been cut; the bow was removed back to the watertight bulkhead at frame number 4; and the side shell of the barge had been reduced to between 4' to 10' of freeboard, except in the forward end where there was only 1' to 2' feet of freeboard. Then in November 2016, MER laid-off the demolition crew and ceased all dismantling of the LONE STAR.

12. MER left the LONE STAR unattended in an unseaworthy condition until on or about April 30, 2017 when the barge was discovered to have sunk, discharging approximately 1,800 gallons of waste oil.

13. At all times immediately prior to and throughout the time of her sinking, the LONE STAR was docked and the weather and sea conditions were calm.

## THE CLAIM

14. Shortly after discovering that the LONE STAR had sunk, MER notified SILC through Safe Harbor Pollution Insurance of the incident. Clean Harbors was engaged to respond to the discharge and began clean-up efforts on May 2, 2017. On May 6, with the permission of the United States Coast Guard ("USCG"), the response moved to a passive

recovery maintenance phase, which allowed Clean Harbors to remain on standby if additional pollution was detected during salvage operations of the sunken barge.  It was reported at that time that MER would undertake the wreck removal.

        15. MER failed to remove the wreck.  As a result, on July 7, 2017, the USCG issued Administrative Order Number 007-17 to MER.  In this letter, the USCG advised that an oily sheen continued to emanate into the environment from the sunken barge.  The Order demanded the following actions:

> 1. Continue to monitor the barge for discharges and provide weekly discharge estimates to this office every Monday via the following email: brett.r.workman@uscg.mil.
>
> 2. Continue to contain the area surrounding the barge with boom and sorbents and immediately remove all recoverable oil upon discovery.
>
> 3. Utilizing a third party salvage expert, develop a plan to remove the substantial threat caused by the sunken barge LONE STAR and submit that plan to my office for review within fourteen (14) days from the date this order was issued.  You plan must include spill contingencies, site safety, and disposal of recovered products.  In addition, if weight handling equipment is used, your plan must specifically address the capabilities of the identified equipment which will be used, ensuring the plan is sound from a salvage engineering standpoint.  Finally, the plan must address efforts to mitigate the risk to threatened and endangered species.  Once the plan has been reviewed, you must also notify my office at least 24 hours prior to any removal operations.
>
> 4. Take measures to remove any current discharge and to remove the threat of any future discharge from your vessel, to include fuel, hydraulic, waste and/or lubricating oils within thirty (30) days from the date this order was issued.
>
> 5. Collect and dispose of all hazardous waste created from this incident, including contaminated sorbent pads,

oily debris, and recovered oily wastes in accordance with all applicable federal and Commonwealth laws.

16. After receiving notice of the USCG Administrative Order, by letter dated July 20, 2017 SILC issued a reservation of rights.

17. Thereafter, on July 28, 2017, the Government of Puerto Rico, Department of Natural and Environmental Resources, issued an Order to MER to remove the LONE STAR wreck.

18. Then on August 14, 2017, the USCG issued an Amendment to Administrative Order: 007-17. The Order demanded the following actions:

> 1. Within (10) days from the date of this amendment, provide documentation to this office of MER Group Puerto Rico entering into a contract with a third party company capable of carrying out the scope of work identified in the previously submitted and amended plans.
>
> 2. Within (14) days from the date of this amendment, conduct a dive assessment to identify the fate and location of any oils still located within the barge. Provide the results of the assessment to this office, as well as a removal plan for accessible oils still contained within the barge. Provide at least 24 hours notification to the U.S. Coast Guard POC listed below prior to conducting the dive assessment.
>
> 3. Within (21) days from the date of this amendment, have contracted resources on-scene which are capable of removing the substantial threat to the environment posed by the Lone Star, to the satisfaction of my office and associated trustees. A pre-operations meeting must be held on site, at least 24 hours prior to operations being conducted. This meeting must include representatives from the U.S. Coast Guard, Environmental Trustees, the contracted third party removal company, and your company.
>
> 4. All other orders listed in Administrative Order 007-17 remain in effect with the following exception: The timeline for order number four has been extended to

5

coincide with the (14) days provided above for a dive assessment.

19. MER ultimately retained Resolve to salvage the LONE STAR.

20. In order to avoid having the USCG federalize the response – and because MER did not have the financial means to undertake the response – SILC agreed to issue a Letter of Undertaking to Resolve for those amounts due under the BIMCO WECKSTAGE 2010 contract they entered into with MER; and to retain Randive to perform the required underwater survey required by the USCG. SILC agreed to do this subject to a continuing reservation of rights; and subject to receipt of a preferred ship mortgage in the crane vessel POLARIS SEVEN for all costs and expenses incurred by SILC should there ultimately be no coverage under the Policy.

21. Based on the presently known facts and the law, SILC now denies the claim for the reasons stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION

22. SILC repeats and realleges each and every allegation set forth in paragraphs "1" through "21" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

23. Under the law, when a vessel sinks in calm weather, a presumption exists that the vessel was unseaworthy and that the cause of the sinking was the unseaworthiness of the vessel.

24. In addition, it has now become clear that the LONE STAR was in an unseaworthy condition when MER ceased dismantling the barge in November 2016.

25. Therefore the LONE STAR was unseaworthy at the time she sank and her sinking was the result of such unseaworthiness.

26. The Policy provides in relevant part:

# CHAPTER 1

## GENERAL TERMS, CONDITIONS and LIMITATIONS

\*\*\*

(b) The Insured's breach of any warranty, express or implied, contained in this Policy shall immediately void this Policy as of the time of the breach and no claim shall be paid under this Policy for losses arising after the breach. The Company may, at its sole discretion, continue coverage provided that (i) it has received written notice of the breach from the Insured, and (ii) the Insured has paid any additional premium as the Company may require and the Company has confirmed in writing that coverage is continued.

(c) It is warranted by the Insured that, after inception of the Policy, the Insured shall at all times use due diligence to maintain each of the Vessels named in the Vessel Schedule in a seaworthy condition.

27. Prior to the sinking of the LONE STAR, MER did not exercise due diligence in maintaining the barge in a seaworthy condition by, among other reasons, not blocking the sea chest intake and other through holes in the hull; failing to undertake routine periodic inspections of the barge as she lay alongside the pier; and failing to periodically pump out any ingress of water into the hull – all of which were necessary to prevent her from losing what little freeboard she had.

28. Prior to the sinking of the LONE STAR, MER did not provide SILC with written notice that it had breached its warranty to exercise due diligence to maintain the LONE STAR in a seaworthy condition; or pay additional premium related to the same breach of warranty.

29. By virtue of the foregoing premises, the Policy was void at the time the LONE STAR took on water and sank on April 30, 2017 and there is no coverage for the pollution mitigation expenses incurred by MER and/or SILC.

## AS AND FOR A SECOND CAUSE OF ACTION

30. SILC repeats and realleges each and every allegation set forth in paragraphs "1" through "30", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

31. MER misrepresented in its application for insurance to SILC that its demolition process would maintain the watertight integrity, trim and stability of the LONE STAR – and that the barge would remain in a condition capable of being towed and remain afloat. These misrepresentations violated the doctrine of <u>uberrimae fidei</u> and render the policy void <u>ab initio</u>. Therefore SILC is not liable for any claims under the policy related to the sinking of the LONE STAR on April 30, 2017.

32. Since Policy is null and void <u>ab initio</u> and no coverage under the Policy came into effect, SILC will tender to MER a return of premium.

## AS AND FOR A THIRD CAUSE OF ACTION

33. SILC repeats and realleges each and every allegation set forth in paragraphs "1" through "32", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

34. The Policy states in relevant part:

**CHAPTER 5**
**EXCLUSIONS**

Notwithstanding any provision in this Policy to the contrary, this Policy does not provide coverage for any liability, loss, damage, cost or expense arising from:

8

\*\*\*

(f) the willful misconduct of the Insured, or the willful misconduct of any person if within the privity or knowledge of the Insured.

35. MER's failure to block the sea chest intake and other through holes in the hull; undertake routine periodic inspections of the barge as she lay alongside the pier; and/or to periodically pump out any ingress of water into the hull – all of which were necessary to prevent her from losing what little freeboard she had – was willful misconduct.

36. Therefore there is no coverage under the Policy for the pollution mitigation expenses incurred by MER and/or SILC.

## AS AND FOR A FOURTH CAUSE OF ACTION

37. SILC repeats and realleges each and every allegation set forth in paragraphs "1" through "36", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

38. The Policy states in relevant part:

### CHAPTER 8

### COOPERATION

(a) The Insured shall immediately forward to the Company all information, communications, surveys, reports, processes, pleadings or other legal papers relating to any Occurrence. It is a condition precedent to the payment of any claim under this Policy that, when required by the Company, the Insured shall: (i) aid in securing information, evidence and witnesses; and (ii) cooperate with the Company, including testifying at the request of the Company, in the defense of any claim or suit and in the appeal from any judgment.

39. As part of its investigation into the sinking of the LONE STAR, SILC sent surveyors to inspect the salvaged sections of the barge and take samples.

9

40. MER has refused to allow SILC's surveyors full access to inspect the salvaged sections of the barge and take samples.

41. Therefore there is no coverage under the Policy for the pollution mitigation expenses incurred by MER and/or SILC.

### AS AND FOR A FIFTH CAUSE OF ACTION

42. SILC repeats and realleges each and every allegation set forth in paragraphs "1" through "41", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

43. MER had an obligation to mitigate and remove the wreck after the response moved to a passive recovery maintenance phase.

44. MER's failure to remove the mitigate and remove the wreck caused the USCG to issue Administrative Order No. 007-17 and/or cause additional discharge of oil from the barge.

45. MER's failures in this regard prejudiced SILC's interests.

46. Therefore there is no coverage under the Policy for the pollution mitigation expenses incurred by MER and/or SILC.

### AS AND FOR A SIXTH CAUSE OF ACTION

47. SILC repeats and realleges each and every allegation set forth in paragraphs "1" through "46", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

48. Because there is no coverage, SILC is entitled to recover from MER all costs and expenses that were incurred and/or paid by SILC related to the sinking of the LONE

STAR, including but not limited to the amounts charged by Clean Harbor, Randive, Resolve and MER.

WHEREFORE, plaintiff STARR INDEMNITY & LIABILITY CO. prays for judgment against defendant MARINE ENVIRONMENTAL REMEDIATION GROUP, LLC as follows:

A. in favor of plaintiff and against defendant on the First Cause of Action for judgment declaring that SILC Policy No. MASILNY00047816 was void at the time the LONE STAR sank on April 30, 2017 and therefore there is no coverage for the pollution mitigation and remediation expenses incurred by MER and/or SILC;

B. in favor of plaintiff and against defendant on the Second Cause of Action for judgment declaring that there is no coverage under SILC Policy No. MASILNY00047816 for the pollution mitigation and remediation expenses incurred by MER and/or SILC by reason that the defendant violated the doctrine of <u>uberrimae fidei</u> which renders the Policy void <u>ab initio</u>;

C. in favor of plaintiff and against defendant on the Third Cause of Action for judgment declaring that there is no coverage under SILC Policy No. MASILNY00047816 for the pollution mitigation and remediation expenses incurred by MER and/or SILC because MER actions were willful misconduct;

D. in favor of plaintiff and against defendant on the Fourth Cause of Action for judgment declaring that there is no coverage under SILC Policy No. MASILNY00047816 for the pollution mitigation and remediation expenses incurred by MER and/or SILC because MER refused to cooperate;

E. in favor of plaintiff and against defendant on the Fifth Cause of Action for judgment declaring that there is no coverage under SILC Policy No. MASILNY00047816 for the

pollution mitigation and remediation expenses incurred by MER and/or SILC because MER failed to mitigate and prejudiced SILC's rights;

  F. in favor of plaintiff and against defendant on the Sixth Cause of Action for judgment awarding SILC all costs and expenses that were incurred and/or paid by SILC related to the sinking of the LONE STAR; and

  G. in favor of plaintiff for such other and further relief that this Court may deem just and proper, together with costs and disbursements of this action.

Dated: New York, New York
    December 18, 2017

            NICOLETTI HORNIG & SWEENEY
            *Attorneys for Starr Indemnity & Liability Co.*

          By: s/ Guerric S.D.L. Russell
            Guerric S.D.L. Russell (GR-4845)
            Wall Street Plaza
            88 Pine Street, 7th Floor
            New York, New York 10005-1801
            Tel: (212) 220-3830
            Fax: (212) 220-3780
            E-mail: grussell@nicolettihornig.com
            (FILE NO.:  28000215 GSR/TLS)

T:\grussell\28-215\Complaint (final).docx