UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STARR INDEMNITY & LIABILITY CO.,

     Plaintiff,       17 CIV 9881 (LGS)

  -against-         **ANSWER, AFFIRMATIVE
                DEFENSES, AND
                <u>COUNTERCLAIMS</u>**

MARINE ENVIRONMENTAL
REMEDIATION GROUP, LLC,

       Defendant.
--------------------------------------------------------X

    Defendant MARINE ENVIRONMENTAL REMEDIATION GROUP, LLC

("MER"), by its attorneys Perkins Coie LLP, as and for its Answer, Affirmative

Defenses, and Counterclaims to the Complaint filed by Plaintiff STARR INDEMNITY &

LIABILITY CO., ("Starr"), responds upon information and belief as follows:

    1.   Paragraph 1 of the Complaint calls for a legal conclusion to which no

response is required.  To the extent that a response is required, however, MER DENIES

the allegations in Paragraph 1 of the Complaint.

    2.   Paragraph 2 of the Complaint calls for a legal conclusion to which no

response is required.  To the extent that a response is required, however, MER DENIES

the allegations in Paragraph 2 of the Complaint.

    3.   Paragraph 3 of the Complaint calls for a legal conclusion to which no

response is required.  To the extent that a response is required, however, MER ADMITS

only that Starr has, in its pleadings, alleged a controversy between itself and MER that

involves the rights and obligations in a contract of insurance.  Except as so specifically

admitted, however, MER DENIES the remaining allegations set forth in Paragraph 3 of the Complaint.

4.      MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 4 of the Complaint.

5.      MER ADMITS that it is a limited liability company with an office and place of business in New Jersey but except as so specifically admitted, DENIES the remaining allegations set forth in Paragraph 5 of the Complaint.

6.      MER ADMITS that at one time the LONE STAR was a pipelaying crane barge, that MER owned the barge at all times relevant to this dispute, and that the LONE STAR's IMO Number was 8757403, but except as so specifically admitted, DENIES the remaining allegations set forth in Paragraph 6 of the Complaint.

7.      MER ADMITS that Starr issued a pollution liability insurance policy to MER that provided certain coverage with respect to the LONE STAR.  MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 7 of the Complaint but submits that the insurance policy itself is the best evidence of its terms and conditions and must be read in its entirety in order to gain the proper context of all of its terms and conditions.

8.      MER ADMITS the allegations set forth in Paragraph 8 of the Complaint but submits that the insurance application itself is the best evidence of its contents.

9.      MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 9 of the Complaint.

10.     MER ADMITS the allegations set forth in Paragraph 10 of the Complaint.

11.     MER ADMITS that it proceeded to canoe the barge, that internal piping had been cut, that a portion of the bow section was removed to a watertight bulkhead, that the side shell had been reduced, and that dismantling of the LONE STAR had ceased due to circumstances beyond MER's control, but except as so specifically admitted, DENIES the remaining allegations set forth in Paragraph 11 of the Complaint.

12.     MER ADMITS that on or about April 30, 2017 the LONE STAR sank and discharged certain quantity of oil, but except as so specifically admitted, DENIES the remaining allegations set forth in Paragraph 12 of the Complaint.

13.     MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 13 of the Complaint.

14.     MER ADMITS that shortly after discovering that the LONE STAR had sunk, MER notified Starr through Safe Harbor Pollution Insurance of the incident, that Clean Harbors was among the companies engaged to respond to the discharge, that Clean Harbors responded to the discharge and began clean up efforts, that the United States Coast Guard ("USCG") authorized the response to move to a passive recovery maintenance phase, that Clean Harbors was allowed to stay on standby, and that wreck removal would be undertaken, but except as so specifically admitted, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 14 of the Complaint.

15.     MER ADMITS that the USCG issued Administrative Order 007-17 to MER and submits that the Order itself is the best evidence of its contents and must be read in its entirety in order to gain the proper context of all of its terms and conditions.

Except as so specifically admitted, MER DENIES the remaining allegations set forth in Paragraph 15 of the Complaint.

16.     MER ADMITS that Starr issued a reservation of rights letter, but except as so specifically admitted, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 16 of the Complaint.

17.     MER ADMITS that the Puerto Rico Department of Natural and Environmental Resources issued an Order to remove the LONE STAR wreck, and submits that the Order itself is the best evidence of its contents and must be read in its entirety in order to gain the proper context of all of its terms and conditions, but except as so specifically admitted, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 17 of the Complaint.

18.     MER ADMITS that the USCG amended Administrative Order 007-17 and submits that the amended order itself is the best evidence of its contents and must be read in its entirety in order to gain the proper context of all of its terms and conditions.  Except as so specifically admitted, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 18 of the Complaint.

19.     MER ADMITS that it retained Resolve Salvage & Fire (Americas), Inc. ("Resolve") to remove the wreck of the LONE STAR, but except as so specifically admitted, DENIES the remaining allegations set forth in Paragraph 19 of the Complaint.

20.     MER ADMITS that Starr conditioned its payment to Resolve relating to the contract to remove the wreck of the LONE STAR on MER providing security in the form of a preferred ship mortgage on MER's crane barge SEVEN POLARIS, but except as so specifically admitted, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 20 of the Complaint.

21.     MER ADMITS that Starr has denied MER's claim under the policy of insurance, but except as so specifically admitted, MER DENIES the remaining allegations set forth in Paragraph 21 of the Complaint and submits specifically that based on presently known facts and the law, the denial of coverage by Starr is wrongful and has been made in bad faith.

22.     MER repeats and re-alleges each and every response set forth in Paragraphs 1-21, inclusive, of this ANSWER with the same force and effect as if more fully set forth herein.

23.     Paragraph 23 of the Complaint calls for a legal conclusion to which no response is required.  To the extent that a response is required, however, MER DENIES the allegations set forth in Paragraph 23 of the Complaint and submits that the presumption, if any, is rebuttable and has actually been rebutted by the facts revealed by the parties' investigations.

24.     MER DENIES the allegations set forth in Paragraph 24 of the Complaint.

25.     MER DENIES the allegations set forth in Paragraph 25 of the Complaint.

26.     MER submits that Paragraph 26 of the Complaint contains no allegations and so requires no response, but to the extent a response is required, MER DENIES

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and submits that the policy itself is the best evidence of its terms and conditions.

27.    MER DENIES the allegations set forth in Paragraph 27 of the Complaint.

28.    MER ADMITS that it did not provide Starr with written notice of a breach of warranty of seaworthiness specifically because there never was any such breach, and ADMITS that it did not pay any additional premium to Starr as none was ever incurred, requested, required, or earned, but except as so specifically admitted, MER DENIES the allegations set forth in Paragraph 28 of the Complaint.

29.    Paragraph 29 calls for a legal conclusion to which no response is required. To the extent that a response is required, however, MER DENIES the allegations set forth in Paragraph 29 of the Complaint.

30.    MER repeats and re-alleges each and every response set forth in Paragraphs 1-29, inclusive, of this ANSWER with the same force and effect as if more fully set forth herein.

31.    MER DENIES the allegations set forth in Paragraph 31 of the Complaint.

32.    MER DENIES the allegations set forth in Paragraph 32 of the Complaint.

33.    MER repeats and re-alleges each and every response set forth in Paragraphs 1-32, inclusive, of this ANSWER with the same force and effect as if more fully set forth herein.

34.    MER submits that Paragraph 34 of the Complaint contains no allegations and so requires no response, but to the extent that a response is required, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations contained therein and submits that the policy itself is the best evidence of its terms and conditions and must be read in its entirety in order to gain the proper context of all of its terms and conditions.

35.    MER DENIES the allegations set forth in Paragraph 35 of the Complaint.

36.    MER DENIES the allegations set forth in Paragraph 36 of the Complaint.

37.    MER repeats and re-alleges each and every response set forth in Paragraphs 1-36, inclusive, of this ANSWER with the same force and effect as if more fully set forth herein.

38.    MER submits that Paragraph 38 of the Complaint contains no allegations and so requires no response, but to the extent that a response is required, MER DENIES knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained therein and submits that the policy itself is the best evidence of its terms and conditions and must be read in its entirety in order to gain the proper context of all of its terms and conditions.

39.    MER ADMITS that Starr sent surveyors and other representatives to MER's facility in Puerto Rico, that Starr's surveyors and other representatives had full and free access for several months, including but not limited to the entire time that the oil spill recovery operations were ongoing as well as the entire time from then until after the entire wreck removal process was completed, to MER's entire facility, to its equipment, to interview MER's personnel, and to inspect the barge both below and above water, and to take samples, but except as so specifically admitted, MER DENIES the allegations set forth in Paragraph 39 of the Complaint.

40.    MER DENIES the allegations set forth in Paragraph 40 of the Complaint.

41.     MER DENIES the allegations set forth in Paragraph 41 of the Complaint.

42.     MER repeats and re-alleges each and every response set forth in Paragraphs 1-41, inclusive, of this ANSWER with the same force and effect as if more fully set forth herein.

43.     MER DENIES the allegations set forth in Paragraph 43 of the Complaint.

44.     MER DENIES the allegations set forth in Paragraph 44 of the Complaint.

45.     MER DENIES the allegations set forth in Paragraph 45 of the Complaint.

46.     MER DENIES the allegations set forth in Paragraph 46 of the Complaint.

47.     MER repeats and re-alleges each and every response set forth in Paragraphs 1-46, inclusive, of this ANSWER with the same force and effect as if more fully set forth herein.

48.     MER DENIES the allegations set forth in Paragraph 48 of the Complaint.

49.     MER DENIES that Starr is entitled to any of the relief that Starr seeks in the Complaint.

50.     MER DENIES all matters not specifically admitted herein.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses to the allegations made in the Plaintiff's Complaint, MER alleges upon information and belief as follows:

### FIRST AFFIRMATIVE DEFENSE

51.     Plaintiff has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

52.     Plaintiff has failed to plead, and in any event this Court lacks, appropriate subject matter jurisdiction to hear this Complaint.

## THIRD AFFIRMATIVE DEFENSE

53.     Starr assumed the risk that its policy of insurance would be called upon to cover the risks insured against in these specific circumstances.

54.     Starr holds itself out to be a world leader in the field of providing pollution insurance coverage to companies engaged in activities that carry a risk of pollution.

55.     In this case, Starr was aware, prior to issuing insurance coverage, that MER was engaged in the business of recycling ships like the LONE STAR.

56.     Starr was aware, prior to issuing its insurance policy, that MER's operations and demolition plans called for dismantling vessels in substantial part while those ships were afloat alongside a pier.

## FOURTH AFFIRMATIVE DEFENSE

57.     Starr accepted coverage, without any reservation of rights, under the subject pollution liability insurance policy with respect to the claim for the cleanup of the oil spill that resulted from the sinking of the LONE STAR.  Starr is therefore estopped to argue that the policy was void or otherwise breached by MER in relation to other related claims stemming from the same incident, including but not limited to the removal of the wreck.

## FIFTH AFFIRMATIVE DEFENSE

58.     Starr accepted coverage, without any reservation of rights, under the subject pollution liability insurance policy with respect to the claim for the cleanup of the oil spill that resulted from the sinking of the LONE STAR.  Starr is therefore barred by the doctrine of laches from arguing that the policy was void or otherwise breached by

MER in relation to other related claims stemming from the same incident, including but not limited to the removal of the wreck.

## SIXTH AFFIRMATIVE DEFENSE

59.     Starr accepted coverage, without any reservation of rights, under the subject pollution liability insurance policy with respect to the claim for the cleanup of the oil spill that resulted from the sinking of the LONE STAR.  Starr's payment of such claim without reservation of rights bars it from seeking and/or obtaining the relief sought in its Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

60.     Starr accepted coverage, without any reservation of rights, under the subject pollution liability insurance policy with respect to the claim for the cleanup of the oil spill that resulted from the sinking of the LONE STAR.  Starr's later-issued reservation of rights is and was untimely, waived, and void.

## EIGHTH AFFIRMATIVE DEFENSE

61.     The relevant policy of insurance issued by Starr expired long before this action was filed by Starr.  Starr is accordingly estopped from seeking and/or obtaining the relief sought herein.

## NINTH AFFIRMATIVE DEFENSE

62.     The relevant policy of insurance issued by Starr expired long before this action was filed by Starr.  Starr is accordingly barred by the doctrine of laches from seeking and/or obtaining the relief sought herein.

## TENTH AFFIRMATIVE DEFENSE

63.     The relevant policy of insurance issued by Starr expired long before this action was filed by Starr.  The actions taken by Starr, when viewed in context, including but not limited to: (i) providing coverage without any reservation of rights with respect to the initial claim of oil pollution spill, (ii) providing legal guidance with respect to the negotiations with Resolve to perform the wreck removal, (iii) agreeing to pay Resolve directly pursuant to the contract between MER and Resolve, (iv) entering into a separate contract to hire MER to provide materials and services to aid the wreck removal effort, and (v) conducting an investigation with salvage masters, surveyors, metallurgists, divers, and legal counsel which concluded as a factual matter that there was no evidence of any wrongdoing or breach of any obligation by MER, serve as a waiver of Starr's right to seek and/or obtain the relief sought herein.

## ELEVENTH AFFIRMATIVE DEFENSE

64.     At all relevant times, Starr knew and understood that the cause of the sinking was not due to any breach of any duty by MER and that instead the sinking was due to an act of vandalism or sabotage by outside persons, the evidence of which subsequently became clear from Starr's own dive survey and from the observations of the surveyors and other representatives of both Starr and MER.

65.     Despite this knowledge and understanding, and despite the fact that MER gave Starr complete and unrestricted access to MER's facility, equipment, employees, documents and other records over a period of many months, including but not limited to the entire time from the initial claim to the conclusion of the wreck removal, Starr nonetheless elected to treat MER in a manner that was an outright breach of Starr's

obligation to comply with principles of *uberrimae fidei*, and accordingly Starr has waived

or is otherwise estopped from seeking and/or obtaining the relief sought in its Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

66.     Despite the express language in the insurance policy requiring Starr to

remove the wreck of the LONE STAR under the circumstances of the claim presented by

its insured, MER, Starr wrongfully and improperly denied coverage for the wreck

removal.  Starr's wrongful conduct in denying a valid claim bars it from seeking and/or

obtaining the relief sought in its Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

67.     Starr engaged in wrongful, unethical, illegal and/or improper claims

handling and settlement practices by requiring MER to issue security to cover its own

claim under the policy.  Starr deceitfully, wrongfully, unethically, illegally and/or

improperly required MER to provide a mortgage on its crane barge SEVEN POLARIS in

the amount of $3,000,000 – an amount far in excess of Starr's own exposure in this

matter, in order to pay the claim that MER had properly asserted under the contract of

insurance.  Starr's wrongful conduct in this regard bars it from seeking and/or obtaining

the relief sought in its Complaint and should result in a summary order of this Court

invalidating the mortgage obtained by Starr from MER in this wrongful manner.

## FOURTEENTH AFFIRMATIVE DEFENSE

68.     Starr engaged in wrongful, unethical, illegal and/or improper claims

handling and settlement practices by forcing MER to act as a prudent uninsured even

though MER had all appropriate cover in place, and through such action exposed MER to

expenses, risks, liabilities and circumstances that have threatened the continued existence

of MER's business.  Starr's wrongful conduct in this regard bars it from seeking and/or obtaining the relief sought in its Complaint.

## COUNTERCLAIMS

Defendant and Counterclaimant MER, by and through undersigned counsel, alleges upon information and belief as follows:

## FACTUAL BACKGROUND

69.    Even though MER is a new and relatively small company, it has already earned international recognition for its procedures and practices that place MER in a very small and elite group of ship recycling companies that not only meets - but exceeds - all health, safety, and environmental protection regulations, requirements, and rules.

70.    Starr is a multi-billion dollar global insurance company that sold a pollution liability insurance policy to MER, No. MASILNY0004786, covering the period June 30, 2016 to June 30, 2017, in exchange for significant premiums that was paid in full.

71.    Pollution risks associated with the LONE STAR were covered under the broad grant of coverage of the pollution liability policy sold by Starr.

72.    The LONE STAR sank as a result of vandalism and/or sabotage.

73.    As a direct result of the sinking of the LONE STAR, certain quantity of oil was released from the wreck.

74.    As required by the broad grant of coverage of the pollution liability policy, Starr responded to the oil spill emanating from the sinking of the LONE STAR without any reservation of rights or any other objections.  In particular, and without limitation,

Starr provided expert spill management services, and paid for the services provided by Clean Harbors and other contractors in connection to the oil spill.

75.     Recognizing that the wreck of the LONE STAR would ultimately need to be removed, MER promptly solicited bids from reputable companies to perform the removal service.  MER, through the insurance brokers, kept Starr fully apprised of its actions in soliciting bids.

76.     After the bulk of the oil spill was cleaned up, the LONE STAR continued to emit small quantities of oil.  Despite the continued emission of oil, the USCG allowed for Clean Harbors to be placed on standby and allowed for the oil spill cleanup to enter into a passive collection phase.  MER duly reported this development to Starr through the insurance brokers.

77.     The USCG continued to monitor the oil leakage from the LONE STAR on a regular basis and indicated that if the leakage continued, the USCG would issue an order requiring the complete removal of the pollution threat.  The USCG indicated further that the only practical approach to the pollution threat would be to remove the wreck in its entirety.  MER duly reported these developments to Starr through the insurance brokers.

78.     MER obtained bids from several reputable companies to perform the wreck removal service and presented those bids to Starr through the insurance brokers.

79.     MER recommended that Resolve be hired to perform the removal service, because Resolve's proposal was the most economical and Resolve also could mobilize to the site on an expedited basis.  MER simultaneously warned Starr that it had received

indications from the USCG that an administrative order would soon issue, and that a similar order from the Puerto Rico government would also soon issue.

80.     Starr responded that it was not obligated to remove the wreck in order to complete the pollution cleanup required by its pollution liability policy.

81.     MER, through the insurance brokers, pointed out that the policy of insurance did include a specific provision for wreck removal services and provided Starr with a copy of the language in its policy that Starr had denied was incorporated.  MER again warned that government orders requiring wreck removal of the LONE STAR were likely imminent.

82.     Starr later admitted that its policy included wreck removal coverage, but belatedly and ineffectively issued a reservation of rights letter that was promptly rejected by MER.

83.     The USCG and Puerto Rico government both issued orders that required the removal of the wreck within a specific timeframe.  MER immediately provided copies of the orders to Starr, which included provisions under which additional time could be sought to respond.

84.     MER repeatedly sought to engage Starr to ensure timely response to the USCG and the Puerto Rico government orders, but Starr simply allowed the time within which to seek additional time to respond to the orders to expire without any response whatsoever.

85.     Starr thereafter belatedly sought additional time from the USCG to respond to the administrative order.  The USCG immediately and summarily denied that

request on the bases that it was untimely and that the time within which to submit a plan to remove the pollution threat was imminent.

86.     Starr informed MER of its plans to send a diver to ascertain whether the source of the continuing oil leak could be found and stopped.  MER warned Starr that the USCG had already advised that any such efforts would be deemed insufficient to remove the threat of pollution as required by the administrative order.  This was because the wreck still contained oil which could leak out, particularly in the event of a significant weather event like a hurricane, and that hurricane season had already commenced.

87.     Starr nonetheless sent its diver, who found a source of oil leakage and was able, at least temporarily, to stop the flow of oil from that source.  As MER predicted, however, the USCG determined that the threat of pollution remained and that such effort was insufficient.

88.     As the deadline to submit a plan to the USCG drew near, Starr took no action.  Instead, Starr instructed MER to act as a prudent uninsured.  On its own initiative, MER submitted to the USCG the Resolve removal plan, which was approved, subject to certain modifications.  MER was given a new deadline by the USCG to enter into an agreement to put the Resolve plan (as modified) into effect.  MER immediately informed Starr of this new deadline.

89.     Despite multiple requests to Starr to work directly with Resolve to develop contract terms that would be acceptable to Starr, Starr again refused to take any action until a few days before the new deadline.  At that time, Starr submitted to the USCG a different plan that would leave the wreck of the LONE STAR in place and would attempt to extract the oil from the wreck.  Before Starr submitted this plan to USCG, MER

warned that the plan proposed by Starr was inconsistent with the USCG order, which required a contract that would follow the Resolve plan.  As predicted by MER, the USCG rejected Starr's eleventh-hour plan on this basis.

90.     MER continued to press Starr to take action, noting that hurricane season had commenced and that a massive hurricane was headed to Texas, MER advised Starr that if a contract was not promptly executed with Resolve, Resolve might mobilize to Texas its equipment needed for the LONE STAR and would not be available to respond to the USCG and the Puerto Rico government orders requiring the removal of the wreck.

91.     Starr refused to work directly with Resolve, which placed MER at risk of violating the USCG order and being subject to civil and/or criminal penalties.  MER informed Starr that its conduct amounted to unfair, unethical and illegal claim handling and settlement practices.  Only then did Starr respond to the proposed contract from Resolve.

92.     On the day that the USCG required evidence that a contract had been executed, Starr refused to cooperate.  Despite numerous back-and-forth negotiations conducted by MER between Resolve and Starr, Starr refused to agree to the terms compromised by Resolve.  Starr allowed the deadline to expire and exposed MER again to civil and potential criminal penalties.  Starr advised MER as late as midnight on the final day that it needed to act as a prudent uninsured, effectively denying coverage to MER.

93.     Given the threat that a massive hurricane heading to Texas could draw Resolve's assets away from the LONE STAR wreck removal project for a long time, and the fact that additional named storms were threatening Puerto Rico, and the fact of Starr's

refusal to cooperate with MER, MER was left with no choice but to execute the contract with Resolve.

94.     The contract entered into between MER and Resolve did not incorporate the entire wreck removal plan, because Starr refused to allow Resolve to hire MER to perform certain required services, including lifting the pieces of the LONE STAR out of the water and onto land.  MER was required to report this to the USCG.  Through discussions with the USCG, MER was able to obtain additional time to negotiate the missing portions of the work plan that would be provided directly by MER.

95.     Starr, in its dealings with MER, engaged in unfair, unethical and illegal claims handling and settlement practices so as to force MER to perform the work required by the USCG to complete the Resolve plan at a level that was below MER's own cost.  Starr also required MER to provide $3 million in security in the form of a preferred maritime mortgage on MER's crane vessel SEVEN POLARIS to Starr, so that Starr would be over-secured against MER in the event that Starr were to bring suit against MER in the future.

96.     Facing the risk of civil and criminal penalties, MER was left with no choice but to comply with Starr's unfair, unethical, and illegal claims handling and settlement practices.  MER entered into a contract directly with Starr to provide certain materials and services in connection with the wreck removal of the LONE STAR.

97.     Because Starr forced MER to enter into contract with Resolve, Starr placed MER at risk of a breach of contract claim (with a heavy financial penalty) plus civil and criminal penalties, because Starr subsequently failed to comply with known,

standard contract terms that caused Resolve to threaten, on various occasions, to declare the contract in breach.

98.     Starr's salvage master, who was also a surveyor, was given open access to MER's facility, equipment, documents, records and personnel.  MER also sent its own qualified surveyor, to observe Starr's activities and those of Resolve.  Upon learning that MER's surveyor was on site, Starr threatened MER that it would deny coverage and file litigation against MER.  Starr also acted in a profane and abusive manner towards the insurance brokers, even though there was nothing at all improper about MER having its representative present on site.

99.     MER dutifully and timely provided all materials and performed all services required under its contract with Starr.

100.    Starr, however, refused to pay for the materials and services.

101.    After four weeks of non-payment, MER advised Starr that it could not continue and would hold Starr in breach of contract in order to recover the monies owed to date.  Starr and MER thereafter met at Starr's offices in New York, and in order to get paid at all, MER substantially compromised the invoice value to settle the dispute and to allow the wreck removal to proceed.  Starr paid the compromised amount after the date on which it promised to pay, but ultimately paid the agreed amount.

102.    MER thereafter continued to provide materials and services as required by the contract but again, Starr refused to pay.  After multiple efforts to get Starr to pay the balance due, Starr made a small "token" payment but left the vast majority of the balance due, $122,640.20, unpaid.

103.    MER again offered to compromise the amount due, but Starr refused to pay anything further, providing no valid reason for such refusal to pay.  To date, this amount remains unpaid, due, and owing, together with interest.

## COUNT I – DECLARATORY JUDGMENT

104.    MER repeats and re-alleges each and every allegation set forth in Paragraphs 70-103, inclusive, of its Counterclaims with the same force and effect as if more fully set forth herein.

105.    Starr sold MER a pollution liability insurance policy that was in effect at the time of the sinking of the LONE STAR.

106.    After notification of the claim and due consideration, Starr accepted coverage for the sinking of the LONE STAR without any objection, reservation of rights, or other expressed concern.

107.    Only after Starr learned that its initial response to the sinking was insufficient to address the entire scope of the pollution response, and that the full cost of pollution abatement for which it was responsible under the policy would include the wreck removal – which was specifically covered under the policy – did Starr issue a reservation of rights letter, for the first time alleging that MER had not maintained the vessel in a seaworthy condition.

108.    The reservation of rights letter was not valid in that Starr had already accepted coverage for the claim.

109.    MER did not breach any obligation to Starr.

110.    MER did not breach any obligation to keep the vessel in a seaworthy condition.

111.     The cause of the sinking had nothing to do with unseaworthiness but was instead the result of vandalism or sabotage.

112.     That the pollution was caused by an act of vandalism or sabotage does not invalidate the contract of insurance sold by Starr to MER.

113.     On the basis of the foregoing, this Court should issue declaratory judgment finding that the policy of insurance was in place and valid at all relevant times and that Starr is liable for the amounts paid to all vendors without recourse against MER, and that Starr is liable for the amounts still owed to MER for services MER provided to Starr under the separate contract for materials and services.

## COUNT II – BREACH OF CONTRACT

114.     MER repeats and re-alleges each and every allegation set forth in Paragraphs 70-113, inclusive, of its Counterclaims with the same force and effect as if more fully set forth herein.

115.     Starr, by making false allegations that MER breached its duty of seaworthiness and by seeking a declaration that the contract of insurance was breached or otherwise was void, has breached the contract of insurance.

116.     Additionally, by wrongfully withholding coverage and by wrongfully instructing MER that it must act as though it is uninsured, and by wrongfully placing MER in a position that it risked civil and criminal penalties when it was, in fact, fully insured, Starr has breached its obligations under the contract of insurance.

117.     MER is entitled to damages for the wrongful breach of contract in an amount that cannot at this time be fully evaluated and which must instead be determined at trial.

## COUNT III – SUE AND LABOR

118.    MER repeats and re-alleges each and every allegation set forth in Paragraphs 70-117, inclusive, of its Counterclaims with the same force and effect as if more fully set forth herein.

119.    By reason of the foregoing, Starr separated its interests from those of MER's, forcing MER to incur sue and labor expenses that are recoverable under the contract of insurance.  These expenses include, but are not limited to:

- the cost of retaining marine surveyors to represent MER's interests;

- the cost of labor and management to respond;

- the cost of wear and tear and use of equipment and tools and consumables;

- the unpaid portion of the contract for materials and services; and

- attorneys fees, costs, and expenses.

120.    MER is entitled to an award of its sue and labor expenses in an amount to be determined at trial.

## COUNT IV – BREACH OF CONTRACT FOR MATERIALS AND SERVICES

121.    MER repeats and re-alleges each and every allegation set forth in Paragraphs 70-120, inclusive, of its Counterclaims with the same force and effect as if more fully set forth herein.

122.    MER provided all of the materials and performed all of the services required under the contract between MER and Starr.

123.    Despite this, Starr has wrongfully and without any valid reason refused to pay for the materials and services.

124.     The wrongful refusal to pay for materials provided and services performed is a breach of the agreement.

125.     MER is entitled to an award of $122,640.20 plus interest and costs by reason of such breach by Starr.

## COUNT V – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

126.     MER repeats and re-alleges each and every allegation set forth in Paragraphs 70-125, inclusive, of its Counterclaims with the same force and effect as if more fully set forth herein.

127.     Starr's actions from the time it wrongfully issued its reservation of rights letter to date, as set forth above, evidence the fact that Starr put its own pecuniary interests ahead of the interests of its insured, MER, in order to extract a financial outcome that was more favorable to Starr, in clear violation of Starr's duty of good faith and fair dealing under the policy of insurance, for which MER paid substantial premiums.

128.     MER is entitled to damages in an amount to be determined at trial for Starr's breach of its duty of good faith and fair dealing which should include, at a minimum, MER's costs in providing Starr with the preferred ship mortgage on the SEVEN POLARIS that Starr wrongfully extorted out of MER.

129.     In addition, this Court should issue declaratory judgment because Starr breached its duty of good faith and fair dealing that the preferred ship mortgage on the SEVEN POLARIS is void and unenforceable and contrary to public policy.

## COUNT VI – BAD FAITH

130.    MER repeats and re-alleges each and every allegation set forth in Paragraphs 70-129, inclusive, of its Counterclaims with the same force and effect as if more fully set forth herein.

131.    Taken as a whole, Starr's actions evidence bad faith insurance practice that Starr knows has the potential to push MER -- a new and relatively small company with limited resources -- into bankruptcy.  MER should be entitled to damages, including punitive damages, in an amount to be determined at trial for such bad faith.

## PRAYER FOR RELIEF

**WHEREFORE**, MER respectfully seeks the following relief:

(a)    Dismissal of Starr's Complaint against MER; and

(b)    For the Counterclaims asserted in Counts I-VI above, declaratory judgment as set forth therein; and

(c)    For the Counterclaims asserted in Counts I-VI above, damages as set forth therein or as may be more fully proven at trial, including but not limited to punitive damages, interest, attorney fees, costs and expenses incurred in this action; and

(d)    For such other and further relief as the Court and/or jury may deem just and proper in the premises.

## JURY DEMAND

MER hereby demands a jury trial on all issues so triable.

24

New York, New York
Dated: March 1, 2018

Respectfully submitted,

**PERKINS COIE LLP**


/s/Schuyler G. Carroll
Schuyler G. Carroll
30 Rockefeller Plaza
22nd Floor
New York, NY 10112
Office: (212) 262-6905
Fax:  (212) 977-1635
scarroll@perkinscoie.com
*Attorney for Marine Environmental*
*Remediation Group, LLC*