UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                               :

STARR INDEMNITY & LIABILITY CO.,    :
                         Plaintiff,  :
                               :

           -against-        :
                               :

MARINE ENVIRONMENTAL REMEDIATION :
GROUP, LLC,
                       Defendant.  :
                               :

---------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _7/27/2018__

17 Civ. 9881 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Starr Indemnity & Liability Company ("SILC") brings this suit pursuant to Title

28 U.S.C. § 1333 against Defendant Marine Environmental Remediation Group ("MER")

seeking a determination of no coverage under a pollution liability insurance policy for losses

caused by LONE STAR, a MER ship. MER moves to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction. The motion is denied.

## I.    BACKGROUND

      The following alleged facts are drawn from allegations in the Complaint and documents

attached to or integral to the Complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

The facts are construed in the light most favorable to Plaintiff as the non-moving party.

*Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

      Plaintiff SILC sold a policy of pollution liability insurance (the "Policy") for three

vessels, including LONE STAR, to Defendant MER. During the policy period, MER began

dismantling LONE STAR. This process stopped in November 2016. Around April 30, 2017,

LONE STAR sank and discharged approximately 1,800 gallons of waste oil. MER notified

SILC of the incident.

## II. LEGAL PRINCIPLES

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In order to survive a motion to dismiss under Rule 12(b)(1), "the plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *Katz v. Donna Karan Co.*, 872 F.3d 114, 120 (2d Cir. 2017). All material allegations in the Complaint are accepted as true, however, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins.*, *v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *accord Lucas v. Fed. Bureau of Prisons*, No. 17 Civ. 1184, 2018 WL 3038496, at *2 (S.D.N.Y. June 19, 2018). In considering 12(b)(1) motions, a court may rely on evidence outside the pleadings. *See Cortlandt St. Recovery Corp. v. Hellas Telecomm.'s, S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015).

### B. Admiralty Jurisdiction

"The U.S. Constitution extends the federal judicial power to 'all Cases of admiralty and maritime jurisdiction.'" *d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 886 F.3d 216, 223 (2d Cir. 2018) (quoting U.S. Const. Art. III, § 2, cl. 1). "Congress has empowered federal district courts to hear '[a]ny civil case of admiralty or maritime jurisdiction.' This grant provides for jurisdiction over claims arising from maritime contracts." *Id.* (quoting 28 U.S.C. § 1333(1)). The question of whether a contract is a maritime contract can be "deceptively simple" -- "[t]he question is clear, but the law is murky." *Id*. When determining whether an agreement is a maritime contract:

> [U]ltimately the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions. In other words, we ask whether the principal objective of the agreement is maritime commerce. The Supreme Court has cautioned that this inquiry is conceptual and not constrained by the location of contract performance or a vessel's involvement in the dispute. Our beacon is the purpose of the

jurisdictional grant—to protect maritime commerce.

*Id.* (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24-25 (2004); *Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.*, 413 F.3d 307, 311 (2d Cir. 2005)) (internal citations and quotation marks omitted).

The Second Circuit has "routinely conclude[d] that insurance policies covering marine risks fall within our maritime jurisdiction." *Id.* at 225. For example, insurance "for pollution coverage for a [floating dry-dock, a] structure used in vessel repair and maintenance . . . directly implicate[d] the business of maritime commerce." *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 822 F.3d 620, 634 (2d Cir. 2016). Similarly, an insurance policy covering a ship tank cleaning company is a maritime contract. *Folksamerica*, 413 F.3d at 323.

## III.  Discussion

The Policy covers maritime risks that give rise to maritime jurisdiction. Defendant's motion to dismiss is denied.

The Policy covers losses stemming from pollution by the covered vessels including, but not limited to: liability under Section 1002 of the Oil Pollution Act of 1990, which imposes liability for damages stemming from oil discharged (or threatened to be discharged) "into or upon the navigable waters or adjoining shorelines or the exclusive economic zone,"[1] 33 U.S.C. § 2702(a); losses arising out of the discharge of on-oil hazardous substances "from a Vessel named on the Schedule of Vessels into or upon the Navigable Waters of the United States, the adjourning shorelines or the Exclusive Economic Zone;" and certain fines and penalties incurred under the Federal Water Pollution Control Act ("FWPCA"), Clean Water Act and Rivers and

---

[1] The United States "exclusive economic zone means the zone seaward of and adjacent to the territorial sea . . . , including the contiguous zone, and extending 200 nautical miles from the territorial sea baseline . . . ." 33 C.F.R. § 2.30.

Harbors Appropriations Act. The primary objective of the Policy is to insure against the risk of pollutants emitted from all of the listed vessels, including LONE STAR. The Policy exudes the briny flavor of maritime jurisdiction.[2] *See, e.g.*, *Fireman's Fund Ins. Co.*, 822 F.3d at 637 (finding that the primary object of a policy that covered liability arising under CPA and FWCPA was marine in nature).

Defendant argues that, because the LONE STAR was a "dead ship" when the Policy was signed, the Policy cannot be a maritime agreement. This argument is unavailing. Both the Supreme Court and Second Circuit have rejected this position. *Kirby*, 543 U.S. at 23 ("To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case."); *d'Amico Dry Ltd.*, 886 F.3d at 226 ("Requiring a connection with a specific vessel is in tension with *Kirby*'s express instruction that the existence of maritime contract jurisdiction cannot be resolved by resort to questions like whether a vessel was involved in the dispute . . . .").

While Defendant asserts that a two-step inquiry is necessary, the Second Circuit has explicitly called this approach into question. For example, in *Fireman's Fund* the Second Circuit stated: "[S]ome uncertainty [exists] as to the extent to which this Court's 'threshold inquiry' test survives the Supreme Court's . . . decision [in *Kirby* ] . . . [where,] [f]ocusing on the contract subject matter, the [*Kirby* ] Court found admiralty jurisdiction." *Fireman's Fund Ins. Co.*, 822 F.3d at 634 (alternation in original). While *Fireman's Fund* did not resolve this question, when

---

[2] Second Circuit maritime jurisdiction cases often contain water puns. *See d'Amico Dry Ltd.*, 886 F.3d at 223 ("[T]he resulting agreement is distinctly briny."); *Folksamerica*, 413 F.3d at 318 (2d Cir. 2005) ("There is little doubt that an *in rem* suit involving a vessel is decidedly salty-it is an admiralty proceeding.").

the Second Circuit addressed the issue of maritime jurisdiction in *d'Amico Dry*, it omitted the "threshold" inquiry altogether. *See generally d'Amico Dry Ltd.*, 886 F.3d 216.

In any event, the dispute at hand would satisfy the "threshold" inquiry into "whether the *subject matter of the dispute* is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Fireman's Fund Ins. Co.*, 822 F.3d at 634 (emphasis in original). This dispute stems from an oil spill off the coast of Puerto Rico that occurred when a vessel sank into the ocean, and the particular issue is whether an insurance policy covers the resulting losses. As with *Fireman's Fund*, this dispute concerns "potential dangers to public health and safety and the environment—matters that would directly impact those who conducted maritime commerce in those waters," *and* pollution coverage which "directly implicate[s] the business of maritime commerce." *Id.*

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket Number 31.

Dated: July 27, 2018

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE